Thank you and may it please the court. Your honors, my name is Jason Monteleone. I represent the appellant Gary Merchant in this appeal. It is a correctional medicine case. The facts and circumstances led to a tragic result. The amputation above the knee of Mr. Merchant's left leg. What is really before this court, I believe, are two issues. One is whether the exhaustion of the administrative remedies requirement under the Prison Litigation Reform Act was completed by Mr. Merchant. And two, whether the district court sanction excluding plaintiff's experts, was an abuse of discretion. If I may start with the Prison Litigation Reform Act issue, I will then move on to the discovery and procedural sanction imposed by the district court. Relative to the Prison Litigation Reform Act, the requirement is that the inmate provided a grievance that suffices to notify the correctional facility of the nature of the wrong. Here in Idaho, the facilities administered by the Idaho Department of Correction, which is no longer a party to this litigation, in their wisdom have basically created a two-track system. That is, if it is a medical grievance, then the inmate is to use a health service request form known as an HSR. If it is a non-medical grievance, then the inmate is to utilize the standard grievance procedure, which is a three-part system. That three-part system for non-health grievances is one in which the inmate has multiple opportunities to challenge it. However, with an HSR, it is not as clearly a delineated system. Now, my client, Mr. Merchant, was aware of both systems and had utilized both. Whether he was questioning or grieving the conditions of his confinement, or he was questioning or grieving the quality of his health care, he knew there were two systems. Relative to the facts that bring us here today, they were all health-related. In turn, Mr. Merchant's use of the HSR process should have sufficed to exhaust the administrative remedies under the PLRA. Counsel, but doesn't the Corison argue that the HSR system is not part of the grievance process? Yes, Judge Bumate, I believe that that is Corison's argument. But the issue is both the warden, a warden for the Idaho Department of Correction, Warden Yorty, and John Migliore, the defendant physician named in the case, recognized that it's the HSR system that is utilized for health-related grievances. So here you have Mr. Merchant, an incarcerated individual, and he's trying to ferret his way through the system. And the evidence in the record before this court is both an IDOC warden and a medical director for Corison recognize that it's the use of the HSRs that allows the inmate grievances for health conditions. Can your client use the typical grievance process for a I believe that he had for a non-emergent situation. Here we had a very different situation, an emergent situation where his leg was amputated within 12 hours of transport. So I mean I understand the impact and certainly this is a you know a really sad case. What I'm struggling with though is what he actually said in those HSRs were things like I want this medicine. He said that it wasn't it wasn't necessarily like my leg is you know my leg needs serious treatment. Something's going wrong here. I need to go to the ER. That's not what he said in those requests. He said I want cortisone or I want Humira or you know other things. So it's not that the HSRs that he submitted on their face necessarily indicated an emergency. So I'm struggling with that a little bit and then also it's a it's a little bit disingenuous isn't it to say that HSRs are for medical issues and the other process is for other things. HSRs are for specific requests and you know prospective requests. I want this thing but if I have a complaint about medical care or medical services that I'm receiving I'm going to use the grievance process. I'm supposed to use the grievance process. Judge Hunsker I understand your point to address them in reverse order. I'm not sure it's disingenuous. During discovery in this case we have a warden and a medical director saying you use the HSRs. Secondly to respond to your other point is there are HSRs that are in the record ER 623 through 632 and in those HSRs Mr. Merchant is complaining about severe pain in his legs swelling and edema in his legs that his leg is still very swollen and that is all occurring in these HSRs. That shifts the burden on the horizon to address these issues. I mean it is to me blatantly obvious this individual was not receiving appropriate medical care by the very fact he swallowed a razor blade to obtain that medical care. So I do believe and I agree with you Judge Hunsker that yes it's an unfortunate set of circumstances but when you have the medical director as well as a warden for the IDOC agency saying that we use HSRs for medical grievances what does it mean to do? I mean the inmate here Mr. Merchant provided the necessary notice and therefore appellant submits all of the exhaustion of administrative requirements under the PLOA were met. I mean I don't remember this from the record do HSRs go to administration or would they only go to medical staff? My understanding your honor is they just go to medical staff they go to the horizon defendants of which Dr. Migliore was medical director for the facility in question. And is it also true in this record that after submitting some of these HSRs your client refused to see medical staff? My client 100% disputes that. I don't believe that's true and I also don't believe that's a reasonable inference from the documents in this case. When you compare all of the medical records from the correctional facility with the HSRs that is a hotly disputed item. Mr. Merchant's position is I tried to get attention for my leg when I couldn't get it I swallowed a razor blade and was immediately transported to a local hospital away from the correctional facility. Turning to the sanction admittedly I am in an unenviable position. I never like to go before a court at any level having missed a deadline. The question the salient inquiry here is is there good cause to avoid this case dispositive sanction of striking plaintiff's experts? Was the failure to meet the deadline the disclosure of expert witnesses substantially justifiable? I have to imagine that this august panel of jurists is not the most excited about having to handle these type of discovery and procedural deadline issues but this one is particularly important in that it was such a drastic remedy. It was case dispositive so it requires starting with what is the procedural transgression committed here that required such a bazooka-like sanction and really when we look at the record before this court the disclosure of experts by Mr. Merchant happened two days after the deadline. Three days after that which would be five days after the deadline there was a supplementation of plaintiff's expert disclosure and the reason for that was that Dr. Madsen's plaintiff's retained medical expert her report on standard of care deliberate indifference and causation had been inadvertently omitted in the first disclosure of experts. Well counsel I'm sorry I'm going to jump in one more time and maybe more than one more time. You don't dispute that you failed to disclose on time is that correct? That is correct your honor. And rule 37 says that this sanction happens if a party fails to disclose on time. It doesn't say if a party egregiously fails to disclose on time or anything like that it just says if there's a untimely disclosure this rule is triggered so does it really matter how many days late because the rule is just if you're late this rule this sanction applies. Well your honor I do think it matters the extent of the procedural violation because we are always looking at the facts to rarify and clarify what sanction is appropriate in a given situation. The cases that have come out of this circuit and even the cases here in the district of Idaho make it clear to me that when you're going to use a case dispositive sanction like this they're reserved for those situations that are agreed as you just noted your honor the ones where a litigant just doesn't show up for a deposition repeatedly or doesn't engage in discovery at all or you know situations where you have such consummationist behavior that you need that bazooka sanction. Appellants admits that we don't have that here we have a situation that falls more in line with what the district of Idaho follows in the Mannion case which is cited in the Mr. Mataloni that's a district court protocol but the rule itself and the Yeti by Molly case would suggest otherwise so I think it would be that is the legal hurdle that you need to address. And I will address that thank you uh Judge McKinnon the uh is I under when I read the rules of civil procedure 16 26 and 37 again what I believe the standard is is whether the two-day or five-day delay in the filing of the expert disclosures was substantially justified whether there was good cause and I believe that the declaration that I have filed what I have laid out what I have tried to explain is it was under these circumstances we don't have a situation here where the appellant was a non-diligent litigant we have a situation where diligence was attempted but as Robert Burns said the best laid plans of mice and men there had been an effort to have staff file it timely with the necessary attachments as soon as it was discovered that that had not occurred two days later the filing happened and as soon as it was discovered that that filing missed the medical experts substantive 0.6 before report it was supplemented so good cause and substantial justification I believe exists to have allowed the appellant that additional two to five days to finalize his expert witness disclosures there's one question and then after that if you want to save your time you may so please proceed yeah just a real quick I think you mentioned that that the uh testimony or opinion on causation was delivered only five days later but isn't it true that it was not delivered until the rebuttal expert deadline so that was in September so even under your theory major substantial portions of expert testimony was not presented until what like five four or months late uh judge okay no actually the initial filing from Dr. Madsen plaintiff's initially retained medical expert states in her conclusion that series of facts directly led to the horrible outcome that opinion on causation was timely disclosed for Dr. Madsen I would Mr. Eaton. Thank you your honor um good afternoon may it please the court I'm Dylan Eaton uh for appellees and defendants Corizon, Dr. Agler, and Dr. Migliore. This case involves allegations the defendants provided improper medical care to prison to inmate plaintiff merchant in the days leading up to his off-site hospitalization in February of 2016. Plaintiff merchants expert in his case in chief were properly stricken by the district court under rule 37 c1 because he failed to timely disclose experts by the court order deadline. The parties agree there was such a deadline plaintiff admits they violated the court order deadline for expert disclosures but they try to downplay the expert disclosure violations as minor and that it was the sanction of striking them was not justified but they are justified. It was proper to strike plaintiff merchants experts due to untimely disclosures because rule 37 c1 is clear that such a sanction is self-executing and automatic as judge Hensicker has already noted. Moreover it was well within the discretion of the court and it is a discretion discretionary standard regarding the exclusion of experts. It was well within the district court's discretion to strike the experts because for many reasons plaintiff standard of care expert report the one from Dr. Madison that was untimely disclosed was signed two years before the litigation was even initiated so it could have easily been disclosed before the deadline. Can you give to the prejudice prong and what was the harm to Khorizan by the late disclosure because it was only a couple of days. Well yeah I would I would beg to differ with that there was an initial disclosure two days late that was an unsigned life care plan and did not include standard of care experts. Then a week later about five days later there was a disclosure of Dr. Madison regarding standard to care opinions. They were deficient under rule 26 and also under rule 702 but in any event and there was also some disclosures related to non-testifying or excuse me non-routine experts those were deficient as well under rule rule c. So this was a what I call drip drip drip of expert disclosures there was a life care plan that was unsigned meanwhile defendants are working with their experts because they have a deadline coming up to address those opinions by plaintiff's experts. Then as initially it didn't appear there was any standard of care then there was a disclosure five days later where there may be standard of care and it was unclear what the non-retained experts were really going to testify. Then two months later there was another disclosure of non-retained experts and then the Dr. Dow affidavit that was discussed didn't show up until after expert disclosure deadlines were over and about four days before dispositive motion the defendants were harmed because they were trying to address a moving target from plaintiff's counsel with their experts and their experts would start an opinion and then have to revise or change course because there continued to be additional late disclosures that continue to be deficient and I think Goodman v. Staples speaks to that there's a you know the timeline is different in that case but it stands for the principle that their late disclosures are harmful to the opposing party and it also talks about we have it here it was there were concerns in that case the defendants experts were developing opinions without knowing the scope of plaintiff's expert opinions in that case so so that that was harmful additionally that's my one problem with the district court didn't make those type of findings if i recall the district court said i've always just find prejudice from from late disclosures rather than making individualized findings for horizon well i i believe that the court did say that a delay is is harmless or is is harmful to defendants he said time is of the essence and he agreed with defendants i think that's an scr627 among other things where there was such a finding and at the end there was a discussion about prior meet and confer on discovery with the court clerk and we had brought up these issues of untimeliness then and because of that discussion defendants had to engage in costly litigation further litigation of deposing defendants or excuse me deposing some of their folks that were disclosed untimely and and they shouldn't have had to do that because they were untimely and ultimately stricken by the court what do you do with the r&r sales case uh where in a situation where the sanctions really result in the dismissal um that you need to have certain findings um particularly whether there might have been a less draconian sanction imposed and i believe your honor's talking about the five-factor test is that what you're referring to so i'm not aware of a case that applied the five-factor test i don't believe the sales case did in a situation where rule 37 c1 applies striking experts and there be an analysis under that rule and um in this case the the court didn't if i from what i can tell from the case law the five-factor test would apply if the sanction is dismissal or a default in this case it was not a sanction of dismissal it was a sanction of striking their experts and then the court engaged in analysis under the motion for summary judgment that then ultimately ended up being a dismissal but it wasn't a tantamount to a dismissal given the nature of the claim and the need for the expert testimony i would agree that striking their experts um was was key to um granting the motion for summary judgment but as i understand the analysis under the case law and under this rule it's the five-factor test would apply if the actual sanction is dismissal which it wasn't in this case the actual sanction was striking experts and then the court had to engage in evaluating the motion for summary judgment and um as they always would i don't know you know to me it doesn't seem like there'd be much of a difference if the opposing party failed to include a document the key document or key witness testimony in support of their response or objection to the motion for summary judgment the court would go through that analysis under motion for summary judgment which is kind of its own animal to test the um to test the sufficiency of the evidence for the case in chief the court goes through that analysis and then would dismiss it if a key document was missing to my knowledge you're saying that really there is no dismissal sanction there's simply an exclusion sanction that once you evaluate the evidence may lead to dismissal and that that is a distinction in your mind from a sanction that is a dismissal so mr dean i want to follow up on judge mckeon's question about r&r sales wait maybe we agree with you that there should be a distinction between dismissal sanctions and um and striking evidence sanctions but r&r sales tells us that if a striking of evidence as a practical matter results in dismissal then as part of the court's harmlessness analysis it's required to consider willfulness fault bad faith and also the availability of lesser sanctions under rule 37c which is our case so i guess my question for you is what in the record shows us the district court did those additional things that r&r sales requires well your honor as far as the wilfulness and bad faith and faults the court did specifically recognize the chronic failure to disclose it wasn't just one time it continued to happen there were other violations of orders in the case too including you know responding late in violation of the deadline to respond to this positive motion as well and that chronic chronic failure to disclose it is tantamount and we provided some case law in the briefing to showing bad or wilfulness or at least fault so i wanted to make that point and additionally under you know the court didn't specifically talk about the five factor tests and go through each one but i think if you go through the uh hearing in totality those elements are in there if the court were to go that route obviously we don't think that would be the correct route to go but uh for instance we we provided in our briefing that if a court order is violated the first and second factors um fit will cut against cleanness and so to look at the third factor regarding risk of prejudice well i just talked with um judge about about the harm to plaintiffs or to defendants in this case and that was discussed by the district court and the fifth factor regarding availability of other drastic less drastic actions there's um the record shows plaintiffs council didn't request any lesser sanction they didn't try to um for instance is that not a if you go that route isn't that an obligation of the court not the council i'm sorry your honor i'm not following you well i mean in terms of the availability of a lesser sanction isn't that something that's incumbent upon the court to consider it would be within their discretion and i think that's what was yes what was exercised in this case and and i do you know i would emphasize again that the discretionary abuse standard is important to look at and that is what applies here the um the court did did make fine you know they exercised reasonable judgment the court um had facts and in judgment in the record supporting the decision they made so um can i ask a quick shift gears unless they're judges on the exhaustion question is there a way to grieve an emergency medical issue under horizons procedures yes just a technical clarification it's the department of grievances not not necessarily horizons and i think that's somewhat important and i make that distinction because when i'm deviating a little bit and i'll get back to your question but the hsr is only go to the medical people as discussed before and the the prison grievance process is set up and it's clear and it's it's been ruled on it multiple times in the local district that it's an appropriate process there's a concern form that's separate and then you have to file the grievance and then you have to appeal and that's not only to notify the medical providers but to notify the prison as a whole and some of the other department of correction officials maybe the warden that would want to know what's going on and what the complaint is and they want to get involved so um that's a little i digress on the hsr issue um and remind me your question i apologize how how does a prisoner appeal an emergency medical uh grievance or yes is there is there a procedure for that i don't believe that it's directly addressed but they can't in this case there are complaints about the care being provided up for week two weeks up to the if there's a complaint on the first and the hospitalization occurred on the sixth they could file the concern form within that time period before they have to go to the hospital additionally after they come back from the hospital they could also lodge a grievance about some complaint they have but what if they're they're having a experiencing a medical emergency you know his leg was was fully necrotic and and and he's potentially going to die and he wasn't getting any treatment there's no way to get a grievance appeal done without you know taking those weeks long days long process well it would be a i think we have to separate grievance from requesting medical care if he wants to request medical care he can do that right then and there too but if that's denied then you would grieve that correct i mean if they're on their way to the hospital and the ambulance they can't grieve i would agree with that but they could they could grieve up through that time and they can agree afterwards so but but there's i guess so you're saying there's no emergency grievance process i don't believe that was directly addressed in this case and i don't recall there being one your honor um i just flipping to something here excuse me so i understood that the plaintiff merchant concedes that he failed to complete the agreements process he does not contend the grievance process was effectively unavailable to him that's my understanding or rather his claim is solely based on the hsr is my understanding their complaint and that's what's been raised on the appeal so you know that so you're saying he's waived any argument of the unavailability of of immediate assistance yes i don't believe the questions you're asking have been raised by plaintiff's counsel okay i believe it's been the focus is whether you can use an hsr to to grieve and that's that's a separate process and as i explained the grieving and addressing it is is a separate process from the hsr thank you i would just i think i would be remiss if i failed to address some of the facts mr eaton you're you're over time as it is fair enough i saw one minute i thought i had a minute i apologize yeah no it's fine it's a it's a it's a common way to read the clock somehow red does mean stop but fair enough just so you know in terms of the facts that um the briefing is quite extensive on this and and so we're well uh versed in that so don't worry about that thank you thank you i may quickly rebut your honors uh i had the opportunity during learning council's argument to find the citation of the record for the causation opinion that you had asked about judge bumate and that's at er 87 and that causation opinion for dr madsen was disclosed i would be remiss if i didn't address what is characterized as this chronic failure to disclose dr madsen's plaintiffs retained medical expert was disclosed her cv was supplied her prior testimony was supplied her uh fee schedule everything was supplied two days late and for the district court to have simply said it's always prejudiced it's even minimally late is the district court not applying its discretion and that's why we have an abuse of discretion thank you your honors i appreciate your time enlisting the argument today thank you um i appreciate the argument i appreciate also mr monteleone your case just argued merchant versus corazon is submitted
judges: McKeown, Hunsaker, Bumatay